**Mrs. Mary CHAPMAN, Appellant,**

v.

**Gus NELSON, independent executor of the Estates of Henry C. Hartman and Nina D. Hartman, Deceased, Appellee.**

**No. 7243.**

Court of Civil Appeals of Texas, Beaumont.

July 29, 1971.

Campbell & Crouch, Hamilton, Andrew P. Johnson, Carrizo Springs, Wolff &

Wolff, San Antonio, Arthur L. Lapham, Victoria, Edward W. Jones, Jr., Livingston, for appellant.

Taylor, Murray & Davis, San Antonio, R. E. Schneider, Jr., George West, Ralph H. Schlegel, Salem, Or., Stateson, Deane & Ward, San Antonio, for appellee.

STEPHENSON, Justice.

This is an action brought in the district court under the Texas Uniform Declaratory Judgments Act [Art. 2524–1, Vernon's Ann.Civ.St.], to construe the wills of Henry C. Hartman and Nina D. Hartman, both deceased. Gus Nelson, the independent executor of both estates, filed this suit, and named all of the legatees in both wills as defendants. Trial was before the court, and one of the legatees, Mary Chapman, perfected this appeal. All of the parties will be designated by name.

In its judgment, the trial court found that each residuary legatee named in the will of Henry C. Hartman should receive one-seventh of his residuary estate, and that each residuary legatee named in the will of Nina D. Hartman (including Mabel Doebbler) should receive one-eighth of her residuary estate. Mary Chapman, who brought this appeal, was one of the named legatees in each of the wills. It is her contention that her share in each estate should be one-sixth, instead of one-seventh of the Henry C. Hartman estate and one-eighth of the Nina D. Hartman estate.

The uncontroverted evidence shows: Henry C. and Nina D. Hartman were husband and wife, and that they had no children. Henry C. Hartman died October 1, 1963, and his will, dated September 18, 1962, was admitted to probate November 26, 1963. Nina D. Hartman died February 22, 1970, and her will, dated October 1, 1963, and a codicil, dated September 24, 1968, were both admitted to probate March 9, 1970. It was stipulated by all parties that both wills and the codicil were valid and had been admitted to probate. The

legatees named are nieces, great nieces, great nephew or niece-in-law, great nephew-in-law or great niece-in-law of the two decedents.

The primary controversy in this appeal concerns the Nina D. Hartman will. At the time of its execution, seven names were listed as residuary legatees. At the time that will was admitted to probate, on the line with the fifth name was written in pencil "& Mabel D–". The trial court found "Mabel D–" in such will to be Mabel Doebbler.

■ The first two points of error are that there was no evidence to support the finding by the court that "Mabel D–", as written into the will of Nina D. Hartman, is Mabel Doebbler, and insufficient evidence to support such finding. In passing upon these points of error, we consider only the favorable evidence as to the "no-evidence" point and the entire record as to the "insufficiency of the evidence" points. In deciding whether there is evidence to support such finding, we view the evidence in its most favorable light in support of such finding. East Texas Theatres, Inc. v. Rutledge, 453 S.W.2d 466 (Tex.Sup.1970). The same rules are applicable on appeal to findings by the court and finding by the jury. Commercial Union Assurance Company v. Foster, 379 S.W.2d 320 (Tex.Sup. 1964); and Banks v. Collins, 152 Tex. 265, 257 S.W.2d 97 (1953).

Mabel Doebbler testified as follows: That she lived in George West, Live Oak County, and was the widow of Charles F. Doebbler who died October 23, 1968. That Charles F. Doebbler and his brother, Ambrose Doebbler, were sons of Ada Doebbler, who was a sister to Nina D. Hartman. Ambrose Doebbler's wife is Edna Doebbler (all of these, that is, Charles F. Doebbler, Ambrose Doebbler, Ada Doebbler and Edna Doebbler, were named as legatees in Nina D. Hartman's will or codicil). Ada Doebbler died January 24, 1969. Mabel Doebbler knew Nina D. Hartman about forty-six years. Nina D. Hartman

had visited in Live Oak County with her sister Ada and with Mabel Doebbler. Mabel had received letters from Nina D. Hartman and offered six letters and postcards in evidence, some of which were addressed to "Dear Mabel", one of which was signed "Nina D. H." Nina D. Hartman conveyed 259 acres of land in Live Oak County to Charles F. Doebbler in December, 1966, as a gift.

Vivian Doebbler testified to the following: She is married, and has been for the past twenty years, to Charles Allan Doebbler, a son of Mabel Doebbler. They live in George West. She knew Nina D. Hartman and had seen her on many occasions, both in George West and San Antonio. Mabel Doebbler and Nina Hartman were very congenial. Both Mabel and Charles Doebbler thought quite a bit of Nina Hartman. Vivian had never heard Nina Hartman speak of any other person as "Mabel D–". Vivian knew of no one else in the family named "Mabel D–".

Judge James Onion testified to the following: He is presently judge of the 73rd District Court of Bexar County and had been since January 1, 1969. Before that, he had engaged in the private practice of law in San Antonio. He prepared and drafted the will of Nina Hartman dated September 18, 1962, that was admitted to probate (the one in question). He was present at the time the will was executed and the name "Mabel D–" had not been written into the will at that time. He took the executed will back to his office that day, and it remained with him in his files until February, 1969. From 1962, until he moved to the courthouse December, 1968, Nina Hartman came to the office four or five times to look at the will. Sometimes she sat in his office and sometimes in the library looking at the will for thirty to forty minutes. He was not always present when she had the will. Gus Nelson, the independent executor, picked up the will in February, 1969.

The law is well settled in Texas that the primary rule governing the construction of

wills is to ascertain the intention of the testator, and that such intention, if possible, should be gathered from the instrument itself. Avis v. First Nat. Bank of Wichita Falls, 141 Tex. 489, 174 S.W.2d 255 (1943); Hassell v. Frey, 131 Tex. 578, 117 S.W.2d 413 (1938). The most recent expressions from our Supreme Court of Texas are Sellers v. Powers, 426 S.W.2d 533, 536 (Tex.Sup.1968), in which it is said:

"It is fundamental that the primary concern of the court in will construction is the determination of the testator's intent and the effectuation of that intent as far as is legally possible."

and, Haile v. Holtzclaw, 414 S.W.2d 916, 922 (Tex.Sup.1967), in which it is said:

"A cardinal rule in construing a will is for the court to determine the intention of the testator."

The will before us was admitted to probate with "Mabel D–" listed as a residuary legatee. There was no contest by anyone in the probate court, and no appeal from the order admitting the will to probate. The duty of the district court was to construe the will which had been admitted to probate, and this was done. The trial court found "Mabel D–", as written into the list of residuary legatees, to be Mabel Doebbler, and that she was entitled to one-eighth of the estate of Nina D. Hartman. The evidence of Mabel Doebbler, Vivian Doebbler and Judge James Onion supported the finding by the trial court. The "no-evidence" and "insufficiency of the evidence" points are overruled.

In Huffman v. Huffman, 161 Tex. 267, 339 S.W.2d 885 (1960), Justice Greenhill, in a will construction case, quotes from "4 Page on Wills (Lifetime Ed.), 622 et seq., § 1617.

'The only purpose and justification of the admission of extrinsic evidence is to explain testator's meaning which is set forth in the words of the will. Assuming that there is a valid will to be con-

strued, it is the place of the court to find the meaning of such will, and not under guise of construction or under general powers of equity to assume to correct or redraft the will in which testator has expressed his intentions.' Ibid., 627."

The will in the Huffman case was holographic and made certain bequests to "Myrtle, Lyter and Pat." However, the parties to the suit stipulated the persons named were her brother, sister and niece, and it was not necessary for the court to pass upon the question before us. In fact, the only case we have been cited (and we have found no others) similar from the standpoint of identifying legatees when only a first name is used, is Welch v. Rawls, 186 S.W.2d 103 (Tex.Civ.App., Waco, 1945, error ref., w. o. m.). In the will in the Welch case, the testatrix used the names "Will, Clara, Loudell and Jack, Jr." Nothing in the will indicated their last names or their relationship to the testatrix. The trial court held the will to be void for uncertainty, and the Waco Court of Civil Appeals reversed and rendered the case. In its opinion, it was held that the will involved was ambiguous on its face, but the extraneous evidence properly admitted on the trial removed "much, if not all, of such ambiguity."

We have concluded the trial court correctly ruled in effect that it was the intention of the testatrix, Nina D. Hartman, to name Mabel Doebbler as one of the eight residuary legatees. We reach this result both from the standpoint of holding the will to be ambiguous with the extraneous evidence quoted above, rendering it reasonably certain that it was the intention of the testatrix to name "Mabel Doebbler" by using the shorthand version "Mabel D–", and also from the standpoint of merely identifying the person named as "Mabel D–" and therefore explaining the meaning of words used in this will.

■ The next points of error are that there was no evidence that the phrase "& Mabel D–" was written by Nina D. Hart-

man or that it was written with testamentary intent, or that it was executed with the formality required by law. These points are overruled.

It must be remembered that this is an action to construe the wills and nothing more was before the trial court. The record before us does not show any contest before the probate court when the will of Nina D. Hartman was admitted to probate. This will, when admitted to probate, contained the name "& Mabel D–" among the list of residuary legatees. There is nothing in the law of this state requiring a will to be typed, or rendering a will or part of a will invalid because it is written in pencil.

We have found no cases in Texas similar to the one before us, that is, where a name may have been added after the execution of a will. Leatherwood v. Stephens, 24 S.W.2d 819 (Tex.Com.App.1930), was one in which names had been obliterated after the will was executed. That case came to the appellate courts by an entirely different route. A suit was brought in the county court to contest the validity of a will theretofore admitted to probate, and to set aside such probate. After the county court acted upon such contest, a writ of certiorari was filed in the district court, and the relief sought was that the will be established and probated as originally executed.

In the case before us, there was no contest as to the validity of the will admitted to probate in the county court, with an appeal to the district court. No one has asked, at any stage of the proceedings before us, that the order admitting the will of Nina D. Hartman to probate be set aside. Therefore, we are convinced the only matters before us are the construction of the wills.

However, should we be mistaken, we hold the evidence supports the implied finding by the trial court that the name "Mabel D–" was written into the will before the execution of the codicil to the will

of Nina D. Hartman on September 24, 1968. This codicil refers to the will under scrutiny here dated September 18, 1962, and sufficiently identifies the will admitted to probate as being the one referred to in the codicil. No question is raised by anyone as to the legality of either the execution or the probate of such codicil. So, even though we assume the addition of the name "Mabel D–" to such will after execution, the law is well settled in Texas that the execution of a proper codicil has the effect of republishing a prior void will as of the date of the codicil. Everett v. Everett, 309 S.W.2d 893 (Tex.Civ.App., Waco, 1958, error ref., n.r.e.); Boyd v. Frost National Bank, 145 Tex. 206, 196 S.W.2d 497 (1946); Breeden v. Miller, 236 S.W.2d 225 (Tex.Civ.App., Dallas, 1951, no writ); Aven v. Green, 159 Tex. 361, 320 S.W.2d 660 (1959).

■ The last point of error is that the trial court erred in construing the will of Henry C. Hartman to mean that each residuary legatee in that will should receive one-seventh of the residuary estate. The basis for this point of error is that this provision of the will reads as follows:

"(Q) I hereby give, devise and bequeath and direct that all of the rest and residue of my estate, if any, consisting of money, stocks, bonds, etc., personal and real property of which I may die possessed, and wherever situated, which has not been specifically granted and given as shown above, to the following parties to be equally divided and to share and share alike after all my expenses and debts in the administration of this estate have been paid:

(1) JUANITA BROWNING of Salem, Oregon:

(2) MAURINE BIERING of San Antonio, Texas;

(3) MRS. JANE NESBIT of Harris County, Texas:

(4) MRS. MARY CHAPMAN of Hamilton, Texas:

(5) EDNA DOEBBLER of Asherton, Texas:

(6) PAM BROWNING of Salem, Oregon and JOE BROWNING of Salem, Oregon."

It is argued the use of the word "parties" rather than "persons" must have had some significance, together with the fact that there were only six numbers, and the names "Pam Browning and Joe Browning" appeared on the same line. This point is overruled.

We know of no rule of construction which supports the contention that the use of the word "parties" in this will has a different meaning from the use of the word "persons." We note that "person" is one of the synonyms listed under the word "party" in Funk & Wagnalls New Practical Standard Dictionary. The word "party" when used as a part of the language in a will, unless some different meaning is clearly indicated, is synonymous with the word "person", and we so interpret it in this will.

This provision in the will is controlled by the words "to be equally divided and to share and share alike." These words indicate a clear intention on the part of the testator to divide the residue of his estate equally among the persons or parties mentioned. See McMullen v. Block, 168 S.W.2d 667 (Tex.Civ.App., Austin, 1943, error ref., w.o.m.), in which 69 C.J. 288, 289 is quoted as follows:

' "Equally to be divided" when used in a will means a division per capita and not per stirpes, whether the devisees are children and grandchildren, brothers or sisters, nephews and nieces, or strangers in blood to the testator.'

See also, Vogt v. Meyer, 169 S.W.2d 745 (Tex.Civ.App., Amarillo, 1943, no writ), in which the term "share alike" was used, and construed to give five granddaughters an equal share with four daughters. Judgment affirmed.